WEINBERG ZAREH MALKIN PRICE LLP
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
Phone: 212-899-5470
Adrienne Woods, Esq.
Email: awoods@wzmplaw.com

*Proposed Counsel to Debtors Sweet J&R Corp., Sweet Brooklyn Bar, LLC and Sweet Catch Brooklyn, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SWEET J&R CORP.[1]<br><br>Debtor. | Chapter 11 – Subchapter V<br><br>Case No. 24-10223 (DSJ) |

**SWEET J&R CORP.'S PLAN OF REORGANIZATION FOR
A SMALL BUSINESS UNDER SUBCHAPTER V OF CHAPTER 11
OF THE BANKRUPTCY CODE DATED MAY 12, 2024**

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

This plan of reorganization ("**Plan**") under Subchapter V of chapter 11 of title 11, United States Code §§ 101, *et seq*. ("**Bankruptcy Code**") is submitted by Sweet J&R Corp. ("**J&R**" or "**Debtor**"), the above-captioned debtor and debtor in possession, pursuant to Bankruptcy Code §§ 1189 and 1190. Capitalized terms not otherwise defined herein shall have the meanings set forth in Article X of the Plan.

Debtor is owned 100% by its principal, Kawana Jefferson. Debtor provided guarantees for loans provided to Sweet Catch Brooklyn, LLC ("**Catch**") and Sweet Brooklyn Bar, LLC ("**Brooklyn**" with Catch and J&R "**Debtors**"). Debtor is also a co-borrower with Brooklyn under a loan extended by the U.S. Small Business Admistration ("**SBA**").

Debtor has no independent income, but rather is a holding company that owns fifty percent (50%) of Catch and Brooklyn, and nothing more. It has no independent income. Catch and Brooklyn are both themselves Debtors, and their assets are subject to secured Claims against them that far exceed the value of their assets. As such, if J&R were liquidated, its creditors would receive nothing. Thus J&R has no secured Claims. Debtor's principal will fund the Plan payments totaling $6,000.00 ("**Plan Fund**") to creditors from her personal income for a period of 36 months

---

[1] The last four digits of Debtor's federal tax identification number are 3312.

1

commencing on the Effective Date.

The Plan provides for payment of Allowed Administrative Expenses and Priority Claims in full. Subchapter V Trustee Fees will be paid in accordance with the Bankruptcy Code within thirty (30) days of the Effective Date. Debtor's professionals have agreed to be paid within ninety (90) days of the Effective Date. Notwithstanding anything to the contrary stated herein, Allowed Administrative Claims consisting of Professional Fees and Subchapter V Trustee Fees shall not be paid until final Court approval of such fees.

All Allowed Claims, which consist only of unsecured Claims, against J&R will receive will receive a distribution of approximately $6,000.00, in three (3) $2,000.00 payments, in months twelve (12), twenty-four (24) and thirty-six (36) of the Plan. Ms. Jefferson, shall act as Disbursing Agent.

The Bankruptcy Court for the Southern District of New York ("**Court**") will be asked to confirm this Plan. If the Court confirms the Plan, then the Plan will be binding on Debtor, all creditors and interest holders, and other parties in interest in this case.

## ARTICLE I

## HISTORY OF DEBTOR'S BUSINESS OPERATIONS

Kawana Jefferson, Debtor's principal, has worked in the hospitality industry for over 18 years. Ms. Jefferson holds a Bachelor of Science in Psychology from Virginia State University and a Master of Science in School Psychology from Mercy College. Ms. Jefferson opened her first brick and mortar restaurant, Sweet Brooklyn Bar in 2016.

Ms. Jefferson formed J&R to hold 50% of the shares of each of Catch and Brooklyn. Ms. Jefferson opened Brooklyn in 2016. Brooklyn is a neighborhood bar that offers vibrant and robust programming from karaoke nights to weekend brunches. Later, Ms. Jefferson opened Catch, which is located in the Prospect Lefferts Garden area of Brooklyn. Catch is a fast casual restaurant that specializes in seafood and southern cuisine. Catch is a celebration of black food and serves to highlight the contributions that African Americans have made in American cuisine at large.

**Events Leading to Debtor's Bankruptcy Filing**

Debtor provided guarantees for loans provided by Grow America Fund, Inc. ("**GAF**") to Catch. Debtor also provided guarantees for loans GAF provided to Brooklyn, and is co-borrower and guarantor for a loan provided by the SBA to Brooklyn. Finally, Debtor guaranteed a loan to Ms. Jefferson from the NDC Community Impact Loan Fund ("**NDC**").

As previously noted, Debtor has no operations of its own and no ability to repay the debts it has incurred. The assets of Catch and Brooklyn are fully encumbered by their direct obligations.

2

**The Bankruptcy Filing**

Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code on February 13, 2024 ("**Petition Date**"). Ms. Jefferson had filed her personal bankruptcy petition in this Court on January 20, 2024. Accordingly, while Debtor is located in Brooklyn, Debtor's case was filed in this Court based upon the related case of Ms. Jefferson.

On February 14, 2024, this Court entered its Notice of Appointment of Subchapter V Trustee [ECF Doc. No. 9] appointing Salvatore LaMonica, Esq., Subchapter V Trustee ("**Subchapter V Trustee**"). On February 15, 2024, the Court entered its Order Directing Joint Administration of Chapter 11 Cases [ECF Doc. No. 11], thus administratively, but not substantively, consolidating the separate cases of Sweet J&R, Corp. ("**J&R**"), and Sweet Brooklyn Bar, LLC ("**Brooklyn**") and Catch (with J&R and Brooklyn, "**Debtors**").

On April 2, 2024, the Court entered its Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof, which set the deadline for filing Claims other than by government agencies, as May 10, 2024 at 5:00 p.m., and the deadline for government agencies as August 23, 2024, at 5:00 p.m.

**Debtor's Liabilities on the Petition Date**

As of the Petition Date, J&R was co-borrower under an SBA loan totaling $499,281.00 secured by a blanket lien on all of its assets. As dpreviously noted, however, Debtor's only asset is it's 50% ownership interests in Catch and Brooklyn, which themselves have pledged all of their assets to their direct obliges. Several unsecured Claims were filed by entities alleging to have provided goods or services to J&R; however, as J&R has no operations Debtor believes these claims were filed against the wrong entity.

To Debtor's knowledge, neither of the guarantees held by NDC in the amount of $199,100.00 and GAF in the amount of $65,949.00 have been called. Even if they were, they would merely be unsecured Claims for which there are insufficient funds to pay a distribution.

Debtor has no debt entitled to priority.

**Debtor's Current Operations**

Debtor has no operations; it is merely owns 50% of each of Brooklyn and Catch.

**Debtor's Plan Process**

As Debtor has no operations, to facilitate a plan Ms. Jefferson – as 100% owner of J&R – has committed to contribute $2,000.00 per year to fund the plan.

**Debtor's Compliance with the Bankruptcy Code**

Debtor has filed this Plan in good faith and represents the information contained herein is

3

true and correct to the best of its knowledge and understanding. Debtor believes the Plan complies with all applicable provisions of the Bankruptcy Code. Debtor does not believe that subsections (a)(6), (a)(13), (a)(14), and/or (a)(15) of section 1129 of the Bankruptcy Code are applicable to Debtor or the Plan. Debtor affirmatively asserts that the Plan complies with the applicable provisions of sections 1129 (a)(1), (a)(2) and (a)(3), has been proposed in good faith and not by any means forbidden by law. Debtor affirmatively asserts that the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, pursuant to section 1129 (a)(11). Debtor asserts that the Plan complies with sections 1129 (b)(2)(A)(I) and 1129 (b)(2)(B)(ii).

To confirm the Plan, the Court must find that all creditors and equity interest holders would receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. As previously noted, if Debtor were liquidated, Creditors would receive no distribution. Thus, under the Plan, Claim and Equity holders will receive better treatment than if Debtor were to liquidate pursuant to chapter 7.

Debtor must also show that it will have sufficient cash over the life of the Plan to make the required payments and operate their business. Ms. Jefferson will personally guaranty the Plan Fund being used to satisfy the payments due under the Plan. The final Plan payment is expected to be paid on the thirty-sixth-month anniversary of the Effective Date.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE II

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

As required by Bankruptcy Code sections 1122 and 1123, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive under the Plan. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity interest can be impaired if the Plan alters the legal, equitable or contractual rights to which a Claimant is otherwise entitled. All Classes of Creditors are impaired under the Plan. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

The Plan provides for payment of "Allowed" claims which are defined in Article XI. Allowed Claims generally are claims that: (a) are allowed by final order of the Court, (b) estimated by final order of the Bankruptcy Court, or (c) claims that are listed on the debtor's Schedules and are not listed as disputed, contingent, or unliquidated.

*Unclassified Claims.*

Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code § 1123(a)(1).

*Administrative Expenses.*

Debtor must pay all Allowed Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any

4

Administrative Expense that is undisputed and is due and owing on the Effective Date shall be paid in accordance with this Plan, or upon such other terms as agreed upon by Debtor and the holder of an Allowed Administrative Expense or court order. If the Administrative Expense is disputed, payment will be made promptly after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

(a) Debts that Debtor incurred after the Petition Date for goods and services related to the customary operation of Debtor's business. These obligations will be paid on an ongoing basis in accordance with Debtor's customary business practices and the terms between Debtor and applicable counterparties.

(b) The value of the goods received by Debtor in the ordinary course of business within twenty (20) days prior to Petition Date.

(c) Payments due to the Subchapter V Trustee for services rendered and expenses incurred in the Case under Bankruptcy Code § 503(b)(2). All fees and expenses requested by Debtor's professionals and Subchapter V Trustee are subject to review and approval by the Court under Bankruptcy Code §§ 329 and 330.

Debtor does not have any Administrative Expenses.

**Unclassified Claims.**

*Allowed Administrative Claims other than Professional Fee Claims.*

These Allowed Claims incurred in the ordinary course shall be paid in the ordinary course. Debtor estimates Allowed Administrative Claims in the ordinary course to be $0.00.

*Allowed Professional Fee Claims.*

Allowed Professional Fee Claims shall be paid in full, in Cash from the the prepetition retainers and Disposable Income from post-confirmation operations within 90 days after the Effective Date. Debtor estimates Allowed Professional Fee Claims to be $0.00.

*Priority Tax Claims.*

Debtor does not owe any Priority Tax Claims.

**Classes of Claims and Interests**.

A. General Unsecured Claims (Class 1)

Class 1 consists of the Allowed Claims of non-priority unsecured creditors, including the SBA Claim in the amount of $499,100.00. The SBA will receive a distribution of $6,000.00 from the Plan Fund over the life of the Plan. Holders of Class 1 Claims are impaired and may vote on the Plan.

    C.    Interests of the Debtor (Class 2)

Class 2 consists of the Interests in Debtor. The holder of such Interests, Ms. Jefferson, shall retain here Interests in Debtor and is not impaired under the Plan.

## ARTICLE III

## CONFIRMATION OF THE PLAN

*Voting by Impaired Classes of Claims.* Holders of Claims in Class 1 are Impaired and entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited. A Class of Claims Impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

*Acceptance by Impaired Classes of Claims.* If Holders of Claims in Class 1 vote to accept the Plan, Debtor will seek confirmation under §§ 1191(a) of the Bankruptcy Code.

*Rejection by Impaired Classes of Claims.* If Holders of Claims in Classes do not vote to accept the Plan, Debtor will seek confirmation pursuant to § 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it.

## ARTICLE IV

## IMPLEMENTATION OF THE PLAN

*Means for Implementation of the Plan.*

The Plan will be funded by the Plan Fund. On the Effective Date, all property of Debtor, tangible and intangible, will revert to Debtor, free and clear of all Claims, except as provided in the Plan. Upon the Effective Date, pursuant to Bankruptcy Code § 1191(a), Ms. Jefferson shall continue to own the Interests in Debtor as Reorganized Debtor. Ms. Jefferson will continue to serve as principal officer of Debtor. Upon the Effective Date, Debtor shall commence making all payments required under the Plan according to the payment provisions of the Plan to directly to claimants.

*Claim Objections.*

After the Effective Date, Reorganized Debtor shall have the sole authority to: (a) file, withdraw, or litigate to judgment, any objections to Claims; and (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, Reorganized Debtor shall have and retain any and all rights and defenses Debtor had immediately prior to the Effective Date with respect to any Disputed Claim.

Any objections to Claims shall be filed on or before the Claims Objection Bar Date. For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Claims at

6

any time.

*Avoidable Transfers; Settlement of Claims and Interests.*

Avoidance Actions will not be pursued by Debtor or Reorganized Debtor.

Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Avoidance Actions, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Avoidance Actions, and controversies pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Code § 1123 and Bankruptcy Rule 9019 of all such Claims, Interest, Avoidance Actions, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of Debtor, its Estate, and holders of all Claims and Interests.

*Treatment of Executory Contracts and Unexpired Leases.*

All executory contracts and unexpired leases, not otherwise assumed or rejected by Debtor during the pendency of the Chapter 11 Case shall be assumed rejected. Nothing contained in the Plan shall constitute an admission by Debtor or any other party that any contract or lease is an executory contract or unexpired lease or that Debtor has any liability thereunder.

*Effect of Confirmation of the Plan.*

After entry of the Confirmation Order and upon the Effective Date, all debts of Debtor shall be deemed fixed and adjusted according to the Plan, and Debtor and Reorganized Debtor shall have no liability on account of any Claims, except as set forth in the Plan and the Confirmation Order.

## ARTICLE V

## FEASIBILITY OF THE PLAN

Pursuant to Bankruptcy Code §§ 1129(a)(11) and 1191(a), the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor, unless such liquidation or reorganization is proposed in the Plan. Ms. Jefferson has committed to fund the Plan with the Plan Fund.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. As Claimants would receive nothing in the event of a liquidation under Chapter 7, they receive more under the Plan than they would otherwise receive.

7

# ARTICLE VI

## DISCHARGE, EXCULPATION AND RELEASE

*Discharge*. If the Plan is confirmed under Bankruptcy Code §1191(b), as soon as practicable after completion by Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by Debtor after the order for relief under this chapter, the Court shall grant Debtor a discharge of all debts provided in Bankruptcy Code § 1141(d)(1)(A), and all other debts allowed under Bankruptcy Code § 503.

*Binding Effect*. Except as provided in Bankruptcy Code §§ 1141 or 1192, as applicable, the provisions of this Plan shall, upon entry of the Confirmation Order, bind Debtor, each and every Claimant and holder of an Interest, and each party in interest, whether or not the Claim of such Claimant or Interests of such holder or party is provided for by the Plan and whether or not such Claimant or Interest holder, or party has accepted or has rejected the Plan. All payments made under the Plan will be in full and final satisfaction of the Allowed Claims of creditors.

**Injunction. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WITHOUT LIMITATION ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE), AGAINST DEBTOR, REORGANIZED DEBTOR, DEBTOR'S PROPERTY, OR ESTATE BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE EFFECTIVE DATE, INCLUDING ANY CLAIMS THAT ARE PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE (COLLECTIVELY, THE "RELEASED CLAIMS");** *PROVIDED, HOWEVER*, **THAT NOTHING IN THE PLAN OR CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST DEBTOR, OR ANY OF ITS OFFICERS, DIRECTORS, EMPLOYEES, PRINCIPALS, MEMBERS, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR DEBTOR'S PROPERTY, FOR ANY LIABILITY UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**Release by the Debtor. PURSUANT TO BANKRUPTCY CODE § 1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, DEBTOR SHALL RELEASE UNCONDITIONALLY, AND HEREBY IS DEEMED TO FOREVER RELEASE UNCONDITIONALLY DEBTOR'S ADVISORS INCLUDING ATTORNEYS, ACCOUNTANTS AND FINANCIAL ADVISORS AND THE SUBCHAPTER V TRUSTEE (COLLECTIVELY, THE**

**"RELEASED PARTIES"), FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES. IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**Exculpation. TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE § 1125(e), NEITHER DEBTOR, NOR SUBCHAPTER V TRUSTEE SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASE IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; *PROVIDED, HOWEVER*, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, DEBTOR AND ITS OFFICERS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.**

*Good Faith*. Entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§ 1125 and 1129(a)(3), with respect to the foregoing.

## ARTICLE VII

## CONFIRMATION AND EFFECTIVE DATE

*Conditions Precedent to Confirmation*. The following are conditions precedent to Confirmation of the Plan: (a) all terms, conditions and provisions of the Plan are approved in the Confirmation Order; (b) the proposed Confirmation Order shall be in form and substance acceptable to Debtor, Pursuit, the Subchapter V Trustee and the U.S. Trustee; and (c) Debtor shall have sufficient Cash to pay in full all Allowed Administrative Expenses, including Professional Fee Claims (except to the extent that holders of such Allowed Claims agree to different treatment), and all Allowed Priority Claims, including Priority Tax Claims.

*Conditions Precedent to the Effective Date*. The following are conditions precedent to the Effective Date of the Plan: the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order. The Effective Date shall occur as soon as practicable after the Confirmation Order becomes a Final Order.

*Title to Assets*. Except as otherwise provided in the Plan or in the order confirming the Plan, confirmation of the Plan shall vest all of the property of the estate in Debtor, and after confirmation of the Plan, the property dealt with by the Plan shall be free and clear of all Claims of Creditors of Debtor. Property of the estate shall include, in addition to the property specified in Bankruptcy Code § 541, all property of the kind specified in that section that Debtor acquires, as well as earnings from services performed by Debtor, after the Petition Date but before the Case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first. Except as provided in under Bankruptcy Code § 1185, the Plan, or the Confirmation Order, Debtor shall remain in possession of all property of its estate.

*Binding Effect*. If the Plan is confirmed, the provisions of the Plan will bind Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

*Retention of Jurisdiction by the Bankruptcy Court*. The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under Bankruptcy Code § 1193; (iii) to hear and allow all applications for compensation of professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, including the estimation of Claims, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist.

*Corporate Existence*. As the Effective Date, the certification of incorporation, bylaws, or articles of organization, as applicable, of Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for Debtor to take or cause to be taken all actions (including, if applicable, corporation actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, or after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized under the appliable law, order, rule, or regulation, including without limitation, such authorization to wind down, sell, or otherwise liquidate any and all remaining Assets, and take further action to dissolve Debtor upon or after the filing of a Final

Decree.

*Final Decree*. Once Debtor's estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain entry of a final decree closing the case. Alternatively, the Court may enter such a final decree *sua sponte*.

## ARTICLE VIII

## DEFAULT

Failure of Reorganized Debtor to make the distributions required under the Plan within 30 days of the required deadlines, or failure of Debtor to comply with any of the covenants or obligations contained in this Plan, which failure shall remain uncured for a period of ten (10) business days after written notice and an opportunity to cure, shall constitute a default under the Plan. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code or any alteration of the time period set forth herein ordered by the Bankruptcy Court. In the event of a default, any creditor or party in interest may seek conversion or dismissal of the Chapter 11 Case.

## ARTICLE IX

## GENERAL AND MISCELLANEOUS PROVISIONS

*Definitions and Rules of Construction*. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

*Severability*. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

*Binding Effect*. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

*Headings*. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and *vice versa*, and words denoting one gender shall include the other gender.

*Controlling Effect*. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

*Revocation or Withdrawal of the Plan*. Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation hearing, in which case the Plan shall be null and void and nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, Debtor or any other person, or (b) prejudice in any manner the

11

rights of Debtor or any person in any further proceedings involving Debtor.

*Modification of the Plan*. Debtor reserve the right to seek to amend or modify the Plan by order of the Bankruptcy Court as may be required. After the Effective Date, Debtor may, subject to order of the Bankruptcy Court, and in accordance with § 1127 of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

*Reservation of Rights*. Nothing contained herein shall prohibit Debtor or Reorganized Debtor from prosecuting or defending any of the rights of Debtor's estate.

*Severability*. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

*Successors and Assigns*. The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

## ARTICLE X

## DEFINITIONS

For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code, or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

"Administrative Expense" means any cost or expense of administration of the Case entitled to priority in accordance with the provisions of Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation: (i) Claims for fees and expenses of Debtor's professionals and Subchapter V Trustee; (ii) Claims relating to goods received by Debtor's within twenty (20) days before the Petition Date in the ordinary course of Debtor's business; and (iii) the actual, necessary costs and expenses of preserving Debtor's Estate and operating its business (but only to the extent they are due or payable on or before the Effective Date).

"Allowed" means a Claim, other than an Administrative Expense or Interest in Debtor, which is: (i) listed in Debtor's Schedules filed in Chapter 11 Case as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or unknown and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to Debtor's counsel, and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; or (iii) determined to be allowed by a Final Order of the Bankruptcy Court. To the extent permitted under Bankruptcy Code § 506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been

timely filed, is not considered an Allowed Claim and shall be expunged without further action by Debtor, or Reorganized Debtor.

"Allowed Administrative Expense" means all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

"Allowed General Unsecured Claim" means any Allowed Claim that is not an Allowed Administrative Expense, Allowed Secured Claim, Allowed Priority Claim, or Insider Claim.

"Allowed Priority Claim" means any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §§ 507(a)(3) through (a)(6).

"Allowed Secured Claim" means any Allowed Secured Claim against Debtor (a) secured by a Lien on Collateral, to the extent of the value (as of the Effective Date or such other date as may be established by the Court) of such Collateral (i) as set forth in the Plan or (ii) as determined by a Final Order of the Court pursuant to section 506 of the Bankruptcy Code, or (b) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff; *provided, however*, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim.

"Allowed Priority Tax Claim" means any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code § 507(a)(8).

"Avoidance Actions" means any and all claims, suits and causes of action held by Debtor (a) under Bankruptcy Code §§ 544, 547, 548, 549 or 550, and (b) any transferee of a transfer avoidable under Bankruptcy Code § 549 received from Debtor from and after the Petition Date, but prior to the Effective Date.

"Bankruptcy Code" means title 11 of the United States Code, as amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, in which the Chapter 11 Case is pending.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Chapter 11 Case" means Debtor's chapter 11 case filed in the Bankruptcy Court as above-captioned.

"Claim" shall mean a claim against Debtor, as defined in Bankruptcy Code § 101(5).

"Claimant" means the holder of a Claim.

"Claims Objection Bar Date" shall mean the date up to and including 60 days following the entry of the Confirmation Order.

"Confirmation Date" means the date the Confirmation Order is entered in the Chapter 11 Case.

"Confirmation Hearing" means the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means an order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code § 1191 and other applicable sections.

"Creditor" shall have the meaning set forth in Bankruptcy Code § 101(10).

"Disputed Claim" means any Claim, proof of which was timely and properly filed, and (a) listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between Debtor and Claimant or by an order of the Bankruptcy Court, (b) subject to dispute to the extent that Debtor or Reorganized Debtor asserted a claim against the holder of the Disputed Claim, or (c) as to which Debtor interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the filing of an objection to a Claim, or the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (x) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by Debtor as other than disputed, contingent or unliquidated, or (y) the Claim is not listed on the Schedules.

"Effective Date" means the first day on which the Confirmation Order has become a Final Order and on which all the conditions to the Effective Date in the Plan have been satisfied or waived.

"Final Order" means: (a) an order or a judgment of the Bankruptcy Court; or (b) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, *certiorari* or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

"General Unsecured Claim" means an Allowed Claim that is not an Administrative Expense, Priority (Non-Tax) Claim, Priority Tax Claim or Secured Claim.

"Petition Date" means February 13, 2024.

"Plan" means Debtor's Subchapter V of Chapter 11 Plan of Reorganization, as it may be amended or modified.

"Plan Fund" refers to the $6,000.00 contribution contributed by Ms. Jefferson to fund the Plan.

"Professional Fee Claim" means any Administrative Expense by a professional retained by Debtor by Final Order of the Bankruptcy Court, and any Claim held by the Subchapter V Trustee

14

for purposes of this Plan, for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Effective Date to the extent such fees and expense have not been paid pursuant to an order of the Bankruptcy Court.

"Releasing Parties" means, collectively, all holders of Claims (whether or not asserted, transferred, hypothecated, waived, Allowed, allowable, choate, known, accrued, treated under this Plan or otherwise) against, or Interests in, Debtor.

"Reorganized Debtor" means Debtor after the Effective Date.

"Schedules" means Debtor's filed Schedules of Assets and Liabilities and Statement of Financial Affairs, as they may be amended pursuant to the Bankruptcy Rules.

"Subchapter V Trustee" means Salvatore LaMonica, Esq. in his capacity as the Subchapter V Trustee in the Chapter 11 Case.

"U.S. Trustee" means the Office of the United States Trustee for Region 2.

## ARTICLE XI

## NOTICES

Notices shall be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

> If to Debtor:
> WEINBERG ZAREH MALKIN PRICE LLP
> 45 Rockefeller Plaza, 20th Floor
> New York, New York 10111
> Adrienne Woods, Esq.
> awoods@wzmplaw.com
>
> If to the U.S. Trustee:
> Andrea B. Schwartz, Trial Counsel
> U.S. Department of Justice
> Office of the U.S. Trustee
> Southern District of New York
> Alexander Hamilton U.S. Custom House
> One Bowling Green, Rm. 534
> New York, New York 10004

15

<u>If to the Subchapter V Trustee:</u>
Salvatore LaMonica, Esq.
LaMonica, Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
sl@lhmlawfirm.com

<u>If to a holder of a Claim or Interest</u>:
The address set forth in its proof of Claim filed with the Court, or, if none, at its address set forth in the Schedules.

Dated: New York, New York
      May 12, 2024        **SWEET J&R CORP.**

                */s/ Kawana Jefferson*
                Name:  Kawana Jefferson
                Title: Sole Stockholder